In re the Marriage of John W. STRAUCH, petitioner, Appellant,

v.

June STRAUCH, Respondent.

No. C0–86–1484.

Court of Appeals of Minnesota.

March 3, 1987.

 

William J. Hanley, Minneapolis, for appellant.

Charles E. Mertensotto, St. Paul, for respondent.

Considered and decided by WOZNIAK, P.J., and LESLIE and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

John and June Strauch's marriage was dissolved on May 28, 1986. John Strauch appeals the trial court's inclusion of overtime pay as part of the basis for calculating

his child support payments, and challenges the trial court's award of spousal maintenance. We affirm.

## FACTS

The Strauchs were married on September 23, 1966, and separated in September 1984. They had two minor children at the time of the dissolution, Jennifer, age nine at the time of the dissolution, and Melissa, age eight. June and John were both forty-four years old when their marriage was dissolved on May 28, 1986.

Appellant has been a communications technician with American Telephone & Telegraph Co. (AT & T) for seventeen years. Through his employer, appellant has a savings and security plan worth $5245, a pension and profit sharing plan worth $8489, and a stock ownership plan worth $2660. The parties agreed to split the total of these plans ($16,394) fifty-fifty. They agreed each would receive an automobile and keep the property in his or her respective possession.

The parties also stipulated that respondent would have physical custody of the two children, subject to reasonable visitation by appellant. Appellant would continue to provide medical coverage for the children for the duration of his support obligation. The parties stipulated that the statutory guidelines require appellant to pay thirty percent of his net income for child support.

Respondent has received AFDC since the parties separated, two years prior to the dissolution. In addition to AFDC, she receives food stamps. Respondent is a high school graduate. Her math skills are poor, but through AFDC she is participating in the WIN program to brush up on math, English, and spelling. During the first ten years of the marriage, respondent was not employed, with the exception of some babysitting she did for her sister. In 1984, respondent was in training to be a nurse's aide for Volunteers of America. Her base salary was $5.30 an hour. After one month, she left that position because she had trouble caring for stroke victims after her father suffered a stroke, and because she had difficulty finding a babysitter while she worked.

In the two years since she separated from her husband, respondent has not attempted to find work. She testified that a psychologist with whom she had contact through the WIN program suggested she should first brush up on her basic skills and should have some training because she can do nothing with her background without further education.

Prior to the dissolution, respondent was diagnosed as suffering from marital dysfunction and severe depression. She sought treatment for sleep disorder, weight loss, stomach pains, and headaches. Her physicians recommended that respondent seek psychiatric counseling, but she declined to do so.

The trial court ordered appellant to pay child support in the amount of thirty percent of his net income, including overtime compensation, and ordered a bi-annual adjustment according to the cost of living index (CPI-U). The court also ordered appellant to pay $300 per month spousal maintenance for five years from date of entry of the decree. His employer is to withhold child support and spousal maintenance, and remit the payments to Ramsey County Support & Collection Services. The court reserved the question of maintenance after five years.

The trial court included in its judgment and decree the parties' stipulations with regard to custody, property division, insurance, a trust to provide for the children in the event of appellant's death, and awarded respondent attorney's fees.

John Strauch appeals the maintenance award and inclusion of overtime pay in the calculation of his child support obligation.

## ISSUES

1. Did the trial court err by including appellant's overtime pay in its calculation of appellant's child support obligation?

2. Did the trial court err by awarding spousal maintenance in the amount of $300 for five years?

## ANALYSIS

### I.

*Child Support*

A trial court has broad discretion with respect to child support, and this court will not reverse the trial court's decision unless it is clearly erroneous. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

Appellant claims the trial court failed to adequately consider his financial resources and needs, as required by Minn.Stat. § 518.17, subd. 4(e) (1984). *Riley v. Riley*, 369 N.W.2d 40, 44 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Aug. 29, 1985); *Kramer v. Kramer*, 372 N.W.2d 364, 367–68 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985) (remanded for assessment of noncustodial spouse's ability to pay and determination of custodial spouse's increased resources). Appellant alleges the trial court "apparently ignored" the expenses enumerated in his exhibit.

■ The court's findings adequately answer appellant's contention. Appellant's exhibit lists his expenses at $1290 per month, excluding child support and attorney's fees. The trial court specifically found that appellant's claimed monthly needs are approximately $1300. The court found respondent's demonstrated needs for herself and the two minor children are $1015 per month. We find no error in the court's consideration of the parties' projected needs in awarding child support.

Testimony and exhibits support the trial court's finding that appellant's monthly net income is $2,119.69, and that respondent's income for herself and the two minor children is $528 per month from AFDC, plus $104 per month in food stamps. After subtracting child support of $635.91 (30% of $2,119.69), appellant has $1,483.78 with which to pay expected living expenses of $1290 and maintenance of $300.

■ Appellant claims the amount by which his expenses will exceed his income will range from $106.21, with continuing overtime, to $521.80 if no overtime is available. We do not find that the trial court abused its discretion by arriving at the figures it did. In the future, should appellant's overtime be permanently reduced, he has a right to apply to the court for relief.

■ Respondent and the children have projected needs of $1015 per month, and were awarded $935.91 per month with which to satisfy them, $635.91 in child support and $300 in maintenance. This leaves respondent with a deficiency of $79.09. Both parties might not meet projected living expenses given the combined available funds. We agree that the figures are close for both sides, and that neither party is going to live well, but a trial court can only attempt to fairly divide what income there is. It cannot increase income.

■ Minn.Stat. § 518.551(5)(e) (1984) specifically requires findings to justify an upward departure from the child support guidelines. *Mentzos v. Mentzos*, 353 N.W.2d 683, 684 (Minn.Ct.App.1984) (citing *Johnson v. Johnson*, 352 N.W.2d 819 (Minn.Ct.App.1984)). If a court's determination with respect to child support has a reasonable and acceptable basis in fact, however, it must be affirmed. *See Justis v. Justis*, 384 N.W.2d 885, 890 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986) (citing *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983)).

The trial court recognized that child support as ordered, based upon appellant's varying income, may exceed the guidelines. To support the departure, the court stated it had considered the age of the children, their physical, educational, and extracurricular needs, the disparity between financial resources and needs of custodial and noncustodial parent, and the standard of living the children would have enjoyed had the marriage not been dissolved.

■ Appellant alleges the evidence does not support the trial court's finding with respect to age, physical needs, and extra-

curricular needs of the children. At trial, respondent stated that the girls were eight and nine years old and full time students. Respondent pointed out that her projected expenses did not even include amounts for church, entertainment, and school supplies for the children. Respondent also testified that, for their medical visits, the girls had to be transported from their home in Mounds View all the way to the Share Clinic in Bloomington. The record, taken as a whole, supports the trial court's conclusion that the children have certain extracurricular needs.

■ Appellant claims no evidence supports the trial court's consideration of the standard of living the children would have enjoyed had the marriage not been dissolved. However, there was evidence that, had the marriage not been dissolved, the children would be living in a household of four with a disposable income of $2119 per month. Even with the present award of child support, respondent and the children compose a household of three, living on an income of $935.91.

■ A determination of net income for the purpose of calculating child support will be affirmed if it has a reasonable basis in fact. *Justis*, 384 N.W.2d at 890 (citing *DuBois*, 335 N.W.2d at 507; *Letourneau v. Letourneau*, 350 N.W.2d 476, 479 (Minn. Ct.App.1984)). Where overtime income has been a regular, steady source of income for the past several years, the trial court may properly include the overtime income in the income used to calculate child support, although the opportunity to work overtime in the future may decrease. *Justis*, 384 N.W.2d at 890–91.

■ Appellant claims that the record contains no evidence to support a finding of past regular overtime. Appellant's income from his AT & T job was $31,840.39 in 1980, $26,446.16 in 1981[1], $33,538.48 in 1982, $33,942.50 in 1983[2], $37,977.03 in 1984, and $43,011.49 in 1985. W–2 forms were introduced to show income for 1983 and 1985. The remaining values were taken from a statement of account of appellant's stock ownership plan with AT & T.

The evidence showed appellant's income from regular hours and overtime combined has risen steadily over the past five years. The evidence of a steady rise in appellant's income supports the trial court's finding that appellant's overtime income was regular.

II.

*Maintenance*

The trial court has wide discretion in determining whether to award maintenance to a spouse. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). The court may grant maintenance if it finds that a spouse

(a) lacks sufficient property * * * to provide for reasonable needs of the spouse considering the standard of living established during the marriage, *especially, but not limited to, a period of training or education,* or

(b) is unable to provide adequate self support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. 518.552, subd. 1 (1985).

Appellant contends that respondent could immediately find gainful employment if she wanted, and that maintenance is not warranted because respondent is not motivated to complete her education and has no specific goal in mind.

■ The trial court found that respondent was basically unemployed during her marriage, and that she had a limited em-

---

1. The reduction was due to appellant's relocation and difference in regional pay structures.

2. Appellant disputes this amount as shown on the statement of account on his AT & T stock

dividend plan, but gives no explanation or alternative figure. The amount shown corresponds to the figure in appellant's 1983 W–2 form.

ployment history before her marriage. The court found that respondent needs maintenance so she can obtain additional education and training to become productive in the job market. Additionally, the court found that respondent has suffered from marital dysfunction and severe depression, and that her health indicated a reservation of maintenance for the period after she completes education and training was appropriate. These findings are supported by medical records and other testimony.

We hold the award of five years maintenance did not constitute error.

## DECISION

The trial court did not err by awarding child support amounting to 30% of appellant's net income, including overtime pay. The trial court did not err by awarding respondent spousal maintenance of $300 per month for five years.

Affirmed.